# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Watts Constructors, LLC ) ASBCA No. 59602
)
Under Contract No. N62473-10-D-5418 )

APPEARANCES FOR THE APPELLANT: Peter N. Ralston, Esq.
Alix K. Schroeder, Esq.
Oles Morrison Rinker & Baker, LLP
Seattle, WA

APPEARANCES FOR THE GOVERNMENT: Ronald J. Borro, Esq.
Navy Chief Trial Attorney
Tracey R. Rockenbach, Esq.
Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE THRASHER
## PURSUANT TO BOARD RULE 12.2

This appeal involves a contract awarded to Watts Constructors, LLC (Watts) by the Naval Facilities Engineering Command Southwest (government) to perform a utility upgrade for Camp Pendleton Marine Corps Base, California. Watts seeks an equitable adjustment for additional direct costs of $41,148 it incurred while removing a differing site condition, as well as, interest it contends was the result of the government's delay in issuing a modification allowing Watts to proceed with the work. The facts are largely undisputed but the parties differ as to how Watts incurred costs should be allocated; whether the costs are direct costs or indirect overhead costs under Federal Acquisition Regulation (FAR) Part 31 cost principles (cost principles). Watts elected to proceed under the Board's Expedited Procedure (Rule 12.2)[1] and the parties elected to decide the appeal on the record pursuant to Board Rule 11.[2] Only

---

[1] The Contract Disputes Act, implemented by Board Rule 12.2, provides that this decision shall have no value as precedent, and in the absence of fraud, shall be final and conclusive and may not be appealed or set aside.

[2] The record consist of: the government's Rule 4 file (tabs 1-30); appellant's Supplemental Rule 4 file (tabs 1-8); the Declaration of Mr. Jeffrey M. Pruett (attachment to appellant's post-hearing brief); the government's Exhibit A, an email exchange between 22 August 2012 and 25 September 2012, Exhibit B, an unsigned modification and Exhibit C, the Declaration of Joseph U. Hill (attachments to the government's post-hearing brief); and Second Declaration of Mr. Jeffrey M. Pruett (attachment to appellant's reply brief).

entitlement is at issue. The Board has jurisdiction over the dispute pursuant to the Contract Disputes Act (CDA) of 1978, 41 U.S.C. §§ 7101-7109. We deny the appeal.

## FINDINGS OF FACT

1. On 16 August 2012, the government awarded Watts a firm-fixed price task order 0003 (contract) under Contract No. N62473-10-D-5418 (basic contract). This appeal primarily involves one requirement under the contract, to Relocate Sewer Lift Station 310406 (Sewer Lift Relocation). (R4, tab 3 at 1, 18)[3]

2. Pertinent to this appeal, the contract incorporated all clauses in the basic contract (R4, tab 3 at 101) which in turn incorporated the FAR cost principles through inclusion of DFARS 252.243-7001, PRICING OF CONTRACT MODIFICATIONS (DEC 1991) (R4, tab 30 at gov't supp. ex. 032).[4] Shortly after award the government informed Watts that it must consistently use a single distribution base for computing field office overhead,[5] using either a per diem rate or percentage mark-up to compute field office overhead on all changes (R4, tab 9). In response, Watts elected to recover overhead rates on a percentage basis, rather than a per diem basis for this contract (R4, tab 28 at 1031). The final cost objective for these costs was the contract as a whole (R4, tab 26 at 1021).

3. Watts encountered a differing site condition that interfered with the installation of the Sewer Lift Relocation (app. supp. R4, tab 7). Watts promptly notified the government and, on 10 July 2013, the government acknowledged a differing site condition existed and notified Watts any work it completed before a processed modification was issued would be at its own risk (app. supp. R4, tab 5 at 2). The work stoppage directly interfered with the installation of a manhole, excavation and completion of the Sewer Lift Relocation work (R4, tab 20 at 978).

4. On 22 July 2013 Watts submitted its initial cost proposal and a revised proposal on 31 July 2013 for the differing site condition. Both cost proposals contained a percentage markup for field office overhead, as was the case on a previous

---

[3] All Rule 4 page numbers are to the Bates-stamped numbers.

[4] DFARS 252.243-7001, PRICING OF CONTRACT MODIFICATIONS (DEC 1991) states, "When costs are a factor in any price adjustment under this contract, the contract cost principles and procedures in FAR Part 31 and DFARS Part 231, in effect on the date of this contract, apply."

[5] The term "field office overhead" is often used interchangeably with the term "job site overhead." For consistency, we refer to the claimed costs at issue as field office overhead.

modification.[6] (R4, tabs 16-18) Mr. Jeffrey M. Pruett testified by affidavit that the percentage method was used under the assumption that the final modification, Modification No. 4 (Mod 4) would be completed before the original contract completion date and, therefore, the costs would be shared with other contract work (Declaration of Mr. Jeffrey M. Pruett (Pruett decl.) ¶ 6). The parties conducted negotiations on 13 August 2013 culminating in an agreement on the costs to be reflected in Mod 4 (R4, tab 19 at 975). While waiting for the Mod 4 to be issued, Watts completed as much of the work as it could on the Sewer Lift Relocation and other contract items; once Watts had completed all possible work on the Sewer Lift Relocation, Watts moved its equipment and personnel to work on other contract items (Pruett decl. ¶ 11).

5. Watts completed all other contract work before Mod 4 was issued and on 18 September 2013 requested that Mod 4 include language providing for payment of "associated costs" related to time delay in executing the modification (R4, tab 22 987-89). That same day, the government responded stating, "Because you charge [field office overhead] as a percentage rate, we don't agree that you are entitled to additional costs for the delay associated with this mod. However, you are more than welcome to submit a proposal for delay costs." (R4, tab 22 at 987)

6. On 20 September 2013, Watts submitted a revised proposal for Mod 4 that eliminated any percentage charge for field office overhead costs but requested a total cost of $57,782 that included $42,004 for the direct site costs (R4, tab 21 at 984).

7. On 23 September 2013, in an attempt to avoid further delay, the government responded to Watts suggesting that the parties execute Mod 4 as negotiated, i.e., including the percentage field office overhead, proposing to resolve the "time and associated costs related to this change" at a later date by the inclusion of language in the mod preserving Watts' claim (R4, tab 22 at 986). Watts executed bilateral Mod 4 on 23 September 2013 reimbursing Watts in the amount of $20,991.00. Mod 4 did not provide any time extension but stated, "If there is time and associated costs related to this change, it will be negotiated later upon Government review of the Contractor's Time Impact analysis dated September 19, 2013." (R4, tab 23) Mod 4 also included 10% mark-up for field overhead costs on the change (R4, tab 22 at 986, tab 25 at 1018).

8. On 15 October 2013, Watts submitted its proposal for additional delay requesting $41,148 and 39 working days (56 calendar days) (R4, tab 24 at 998). The costs claimed for field office overhead were for a quality control manager, a supervisor, an office trailer, and site fencing among other costs that Watts was

[6] Modification No. 3 deleted work and included an amount for field office overhead that employed a percentage mark-up (R4, tab 28 at 1031).

required to provide on site (Second Declaration of Mr. Jeffrey M. Pruett (2nd Pruett decl.) ¶ 3). On 22 January 2014, the government denied Watts' cost proposal because Watts should have recovered these costs through the percentage mark-up for field office overhead as it elected and applied on previous modification (R4, tab 25 at 10118). Mr. Pruett testified that, "If Watts had been aware the Government would merely deny Watts' costs outright, Watts would have waited for the additional funding and/or renegotiated Modification 4 rather than agreed to the reservation" (2nd Pruett decl. ¶ 6).

9. On 30 January 2014, Watts requested a contracting officer's final decision (COFD) (R4, tab 26 at 1020). The government responded with a COFD on 8 July 2014 granting the additional time claimed but denied the claim for direct costs asserting Watts was impermissibly changing its accounting practices on the same contract because Watts was only entitled to recover for these site costs as indirect field office overhead costs and on a percentage basis (R4, tab 28 at 1034).

10. On 25 September 2014, Watts appealed the COFD to the Board and elected the Board's Expedited Procedure (Rule 12.2) and submitted for decision on the record pursuant to Board Rule 11 on 3 November 2014.

## DECISION

The facts are largely undisputed; appellant incurred additional field office overhead costs as a result of the government's delay in processing Mod 4 and the government concedes appellant is entitled to reimbursement for these costs. The dispute is whether these costs should be reimbursed on a percentage basis or direct basis. Appellant contends it is entitled to reimbursement for the actual costs of the claimed costs because they are in fact direct costs under the cost principles based upon the fact they were incurred differently (app. br. at 4-5) and, were not incurred for the same purpose and in a like manner as field office overhead costs (app. br. at 5-6). In addition, appellant contends it would be inequitable not to reimburse these costs directly because of the way they were incurred (app. br. at 6). The government responds that appellant should not recover these costs because the claimed costs are indirect costs (gov't br. at 6-7) and, given appellant's election to charge these costs on a percentage basis, allowing appellant to recover these costs on a direct basis would be contrary to the FAR cost principles and our decisions in *M.A. Mortenson Co.*, ASBCA No. 40750 *et al.*, 98-1 BCA ¶ 29,658 at 146,945-46 (Senior Deciding Group), *aff'g on recon.*, 97-1 BCA ¶ 28,623, and *Caddell Construction Co.*, ASBCA No. 53144, 02-1 BCA ¶ 31,850 (gov't br. at 8-11).

4

FAR 2.101 defines a direct cost as "any cost that is identified specifically with a particular final cost objective.... Costs identified specifically with a contract are direct costs of that contract. All costs identified specifically with other final cost objectives of the contractor are direct costs of those cost objectives." And an indirect cost as "any cost not directly identified with a single, final cost objective, but identified with two or more final cost objectives or with at least one intermediate cost objective." The final cost objective on this project was the contract (finding 2). Consequently, any field office overhead costs incurred on this contract, on any job site, are in reality direct costs. However, the cost principles at FAR 31.105(d)(3) specifically address these types of costs allowing the contractor to treat them as either direct or indirect costs. As one commentator has succinctly explained,

> Job site overhead costs, which are also sometimes referred to as field office overhead costs, are not really "overhead" costs at all (unless the contractor happens to be performing two or more contracts at the same job site). They are direct costs of performing a construction...contract at that site. However, FAR 31.105(d)(3) permits the contractor to charge job site overhead costs either directly or indirectly, provided it follows a consistent practice:
>
>> Costs incurred at the job site incident to performing the work, such as the cost of superintendence, timekeeping and clerical work, engineering, utility costs, supplies, material handling, restoration and cleanup, etc., are allowable as direct or indirect costs, provided the accounting practice used is in accordance with the contractor's established and consistently followed cost accounting practices for all work.

Karen L. Manos, *Government Contract Costs & Pricing*, vol. 2, § 87:D:3 at 316 (2d ed. 2004). Therefore, contractors may charge job site overhead costs either directly (per diem) or indirectly (percentage), as long as they are charged consistently. *M.A. Mortenson Co.*, 98-1 BCA ¶ 29,658 at 146,945-46.

Here appellant elected to use the indirect method (percentage) of charging these types of costs (finding 2). Appellant's initial proposal for Mod 4 included a percentage indirect overhead rate for field office overhead, as it had done on a previous modification (finding 4). Appellant's proposal for additional costs after Mod 4 was delayed eliminated the percentage mark-up for field office overhead and

instead proposed direct costs (finding 6). Therefore, we conclude appellant's claim in this appeal is inconsistent with FAR 31.105(d)(3).

*Appellant's Entitlement to Recover under the Equitable Principles of the Changes Clause*

Appellant contends it would be inequitable not to reimburse it for all of the extra field office overhead costs incurred because the contract performance period was extended as a result of the government's delay in processing Mod 4 (app. br. at 6). We addressed this issue in *Mortenson* in *dicta* where we stated:

> We see no convincing rationale for routinely using different job site overhead distribution bases on changes that extend or shorten contract performance, say, by one day (or one week, or one month), and changes that do not.... Even when a contractor proves it has failed to recover its entire overhead, that is insufficient justification for permitting an accounting change from one distribution base to another....

*Mortenson*, 98-1 BCA ¶ 29,658 at 146,948 n.7. Consequently, we conclude the fact that the contract performance period was extended and that the use of the percentage mark-up might not fully compensate appellant for all field office overhead costs incurred does not, *per se*, entitle appellant to change its distribution base. Additionally, appellant has not presented any evidence of special circumstances that might justify allowing appellant to employ a different distribution base. *Id.*

CONCLUSION

For the reasons stated, the appeal is denied.

Dated: 26 January 2015

JOHN J. THRASHER
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59602, Appeal of Watts Constructors, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals
